## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| KRISTINA GIBEAU AND KEVIN SCHELLENBERGER, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No.: 17-cv-1143 **AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | **Jury Trial Demanded** |
| RSI ENTERPRISES, INC., | ) ) ) | |
| Defendant. | ) ) | |

## INTRODUCTION

1.      Plaintiffs bring this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Defendant in negligently, knowingly and/or willfully placing telephone calls to Plaintiffs' and Class members' cellular telephones without their prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter referred to as the "TCPA").

2.      Defendant has violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), without their prior express consent within the meaning of the TCPA.

3.      This class action also seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

4.      Plaintiffs bring this action, individually and on behalf of all others similarly situated, for actual damages, injunctive relief and statutory damages resulting from Defendant's illegal actions.

## JURISDICTION AND VENUE

5.    The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k, 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012) (holding that federal courts have federal question jurisdiction over TCPA claims) and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

6.    Plaintiff Kristina Gibeau ("Gibeau") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7.    Plaintiff Kevin Schellenberger ("Schellenberger") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

8.    Plaintiffs Gibeau and Schellenberger are roommates at the same address, but are not related to each other.

9.    Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each Plaintiff an alleged debt allegedly incurred for personal, family or household purposes, namely a Kay Jewelers bill.

10.    Gibeau is a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction - the purchase of jewelry for personal use. Wis. Stat. § 421.301(13).

11.    Gibeau and Schellenberger are "persons" pursuant to Wis. Stat. § 421.301(31).

12.    Gibeau and Schellenberger are not "persons related to" each other pursuant to Wis. Stat. § 421.301(32).

13.    Defendant RSI Enterprises, Inc. ("RSI") is a debt collection agency with its principal offices located at 5440 W. Northern Avenue, Glendale, Arizona 85301.

2

14.     RSI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

15.     RSI is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. RSI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

16.     In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

17.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call, including sending a text message, to a wireless number in the absence of an emergency or the prior express written consent of the called party.

18.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls and texts whether they pay in advance or after the minutes are used.

19.     The FCC, has ruled that the word "call" in the TCPA includes both voice calls and text calls, and applies whether the text messages were sent by regular telephone transmission or over the internet to a wireless device. "TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 56-62 (July 10, 2015), (available at "https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.") (Reaffirming the FCC's 2003 ruling that text messages are

3

"calls" under the TCPA and further ruling that text messages sent "internet to phone" and by other sources are also "calls.")

20.     The TCPA "generally prohibits autodialed calls to wireless phones," but "provides an exception for autodialed and prerecorded message calls...made with the prior express consent of the called party." *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 512 (E.D. Wis. 2014) citing *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559 ¶ 9 (Jan. 4, 2008); 47 U.S.C. § 227(b)(1)(A)(iii).

21.     On February 15, 2012, the FCC released a Declaratory Ruling wherein it clarified that a party must obtain ***prior express written consent*** from the recipient prior to making automated calls to the recipient's cellular telephone. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2012 FCC Declaratory Ruling"), 27 F.C.C.R. 1830, 27 FCC Rcd. 1830, 55 Communications Reg. (P&F) 356, 2012 WL 507959 (Feb, 15, 2012), at ¶ 2.

22.     The FCC recently updated its rules on consent, requiring "prior express written consent" for calls or SMS text messages that contain an "advertisement" or "telemarketing." *See* 47 C.F.R. § 64.1200(f)(8).

23.     In the same omnibus order, the FCC clarified "that a called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur." TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 29-30.

24.     The Court is bound by all of the FCC's final orders relating to the TCPA. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, footnote 4 (E.D. Wis. 2014) citing *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the

4

Hobbs Act, the FCC's TCPA orders are binding); *Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding).

25.     The Seventh Circuit has held that the "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242, 1251-52 (11th Cir. 2014) ("called party" means the current subscriber and not the prior subscriber or intended recipient for purposes of the TCPA).

## THE FAIR DEBT COLLECTION PRACTICES ACT,
## 15 U.S.C. § 1692 ET SEQ.

26.     The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

27.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather

5

whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

28.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

29.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd,* 868 F.2d 566 (3d Cir. 1989).

30.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No.

6

16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

31.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt communication containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

32.     The FDCPA prohibits debt collectors from contacting third parties and disclosing the existence of a debt. 15 U.S.C. § 1692c(b) states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary

7

to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

33.     15 U.S.C. § 1692b allows a debt collector to communicate with third parties for the purpose of determining the consumer's location or employment. However, the debt collector must "not state that such consumer owes any debt." 15 U.S.C. § 1692b(2).

34.     The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

35.     15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

36.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

**THE WISCONSIN CONSUMER ACT,
CH. 421-427 WIS. STATS.**

37.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

38.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

39.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

8

40.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

41.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

42.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

43.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

44.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

9

45.     Wis. Stat. § 427.104(1)(e) states that a debt collector may not: "Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information, … (exception not relevant).

46.     The WCA specifically prohibits a debt collector from: "Us[ing] a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney-at-law when it is not." Wis. Stat. § 427.104(1)(k).

47.     The WCA also specifically prohibits a debt collector from "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt." Wis. Stat. § 427.104(1)(L).

## FACTS

48.     On June 20, 2017, at approximately 3:11 PM central time, an RSI employee named "Denise" called Schellenberger's cellular telephone number ending in 2694 ("Call 1").

49.     During Call 1, "Denise" stated:

> Hello, this is Denise. I am trying to reach Kristina Gibeau, G-I-B-E-A-U, social ending in 2177. Kevin, there is a pending civil matter that is filed against her in the office. It's imperative that I speak to this young lady as quickly as possible or her legal representation. I can be reached at 844-224-0134. Thanks so much.

50.     On June 21, 2017, at approximately 2:55 PM, RSI employee "Denise" again called Schellenberger's cellular telephone number (2941) ("Call 2").

51.     In Call 2, "Denise" stated:

> Hi Kevin, this is Denise. I had left you a voicemail, but I did see that you had either called in last night or after we were gone yesterday -- we're in

10

Georgia. We are trying to reach Kristina Gibeau… Gibeau. Anyway, this is about a pending civil matter. If you know this young woman, could you please have her contact me at 844-224-0134. Be blessed, Kevin.

52.     The debt referenced "Denise's" phone calls was incurred for one or more jewelry purchases at Kay Jewelers, not made for resale. Thus, the debt was incurred for personal, family or household purposes.

53.     At all times relevant, Schellenberger is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

54.     RSI is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39) ("The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation.")

55.     All telephone contact by RSI to Schellenberger on his cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

56.     The telephone number that RSI used to contact Schellenberger, made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

57.     Neither Gibeau nor Schellenberger ever provided prior express consent to RSI or the creditor to contact Schellenberger's cellular telephone.

58.     The alleged account was Gibeau's, and she did not provide Schellenberger's number to Kay Jewelers as an alternate phone number from Gibeau.

59.     RSI's telephone calls to Schellenberger's cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

60. RSI's telephone calls, placed to Schellenberger's cellular phone utilizing an "automatic telephone dialing system" ("ATDS") for non-emergency purposes and in the absence of Schellenberger's or Gibeau's prior express consent, violated 47 U.S.C. § 227(b)(1)(A).

61. Under the TCPA, the burden is on RSI to demonstrate that RSI currently had prior express consent within the meaning of the statute.

62. Moreover, by leaving the voicemails on Calls 1 and 2, RSI knowingly and willfully disclosed the existence of a Gibeau's debt to a third party, namely Kevin Schellenberger, in disregard for Gibeau's rights under federal and state law. 15 U.S.C. §§ 1692b, 1692c(b); Wis. Stat. § 427.104(1)(e).

63. Gibeau never provided RSI consent to discuss her alleged account with Schellenberger.

64. "Denise's" references to a "pending civil matter that is filed against" Gibeau and "a pending civil matter" in a phone calls to Schellenberger's telephone number discloses the existence of an alleged debt to a third party and also threatens legal action.

65. Both Call 1 and Call 2 state or imply that a lawsuit is already filed and pending against Gibeau.

66. The reference to a "pending civil matter that is filed against" Gibeau in Call 1 is false, misleading and confusing to the unsophisticated consumer.

67. The reference to a "pending civil matter" in Call 2 is also false, misleading and confusing to the unsophisticated consumer.

68. Both Call 1 and Call 2 state and imply that "a pending civil matter," i.e. a lawsuit, is already filed and pending against Gibeau.

12

69.    Call 1 expressly states that: "there is a pending civil matter that is filed against [Gibeau]," and also requests to speak to "her [i.e. Gibeau's] legal representation."

70.    Upon information and belief, RSI provides its telephone collectors, including "Denise," one or more scripts containing language that the collector should or must use in conversations with consumers.

71.    Upon information and belief, RSI, either through use of a script or through personnel management or both, instructed "Denise" to use the term "pending civil matter" on telephone calls with consumers.

72.    Upon information and belief, RSI, either through use of a script or through personnel management or both, instructed "Denise" to use the terms "pending civil matter that is filed against [the consumer] in the office" on telephone calls with consumers.

73.    Upon information and belief, RSI, either through use of a script or through personnel management or both, instructed "Denise" to request to contact the consumer's attorney, lawyer, "legal representation," or other synonyms for attorney, on telephone calls with consumers.

74.    Any consumer, including the unsophisticated consumer, would interpret "Denise's" statements in Calls 1 and 2 to mean that a lawsuit had already been filed against Gibeau.

75.    In fact, no such lawsuit was pending at the time RSI placed Calls 1 and 2.

76.    Moreover, RSI could not sue either Plaintiff.

77.    RSI is an out-of-state debt collector and is not a law firm.

78.    RSI has no ability to sue Gibeau to collect an alleged debt owed to Kay Jewelers, which would be the real party in interest in any lawsuit.

79. Upon information and belief, RSI had no knowledge whether Kay Jewelers intended to sue Plaintiff or any class member to collect the alleged debts.

80. A search of CCAP reveals that, as of July 14, 1017, Kay Jewelers had not sued Gibeau to collect the alleged debt.

81. Upon information and belief, "Denise" was following a script provided by RSI when she placed Calls 1 and 2 to Schellenberger.

82. Upon information and belief, RSI instructed "Denise" and other collectors at RSI to use the terms "pending civil matter" in telephone communications with consumers.

83. Debt collection communications that falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made," violate the FDCPA. 15 U.S.C. § 1692e(5); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 24-26 (2d Cir. 1989). Such conduct also violates Wis. Stat. §§ 427.104(1)(k) and 427.104(1)(L).

84. Even indirect or oblique threats of legal action give rise to liability, provided they indicate that "legal action is underway or contemplated in the near future." *Jenkins*, 999 F. Supp. At 1136; *Bloodworth v. United Credit Serv.*, No. 15-cv-0502, 2016 U.S. Dist. LEXIS 49129 *4-6 (E.D. Wis. Apr. 12, 2016) ("This five-day deadline combined with the statement that delay would not be tolerated could give the unsophisticated consumer a sense that further action was imminent.").

85. The false, confusing and misleading statements in RSI's phone calls to Plaintiffs and class members are material false statements. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). False statements threatening legal action violate the FDCPA and WCA.

86. The Seventh Circuit has stated: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir.1996); *see also, e.g.*, 15 U.S.C. § 1692e(13); Wis. Stat. § 427.104(k).

87. Plaintiffs were confused by Calls 1 and 2.

88. The unsophisticated consumer would be confused by Calls 1 and 2.

89. Plaintiffs had to spend time and money investigating Calls 1 and 2.

90. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Calls 1 and 2.

## COUNT I – TCPA

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

91. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

92. The foregoing acts and omissions of RSI constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

93. As a result of RSI's knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Schellenberger and each member of the Class are entitled to statutory damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

15

94.     Schellenberger and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA and WCA by RSI in the future.

## COUNT II – TCPA

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ*.

95.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96.     The foregoing acts and omissions of RSI constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

97.     As a result of RSI's violations of 47 U.S.C. § 227 *et seq.*, Schellenberger and each member of the Class are entitled to an award of $500.00 in statutory damages for each for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

98.     Schellenberger and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA and WCA by RSI in the future.

## COUNT III – FDCPA

99.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

100.    RSI communicated with a third party – Schellenberger – about Gibeau's alleged debt.

101.    Gibeau and Schellenberger are not related, and Schellenberger has no interest in Gibeau's alleged debt.

102.    Gibeau did not at any time consent to RSI communicating with Schellenberger about Gibeau's account.

16

103.    RSI violated 15 U.S.C. §§ 1692b, 1692c(b), 1692e and 1692e(10).

## **COUNT IV -- FDCPA**

104.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

105.    RSI threatened litigation and implied that litigation was already pending against Gibeau during Calls 1 and 2.

106.    RSI's employee, "Denise," stated on Call 1 that: "there is a pending civil matter that is filed against [Gibeau]," and also requested to speak to "her [i.e. Gibeau's] legal representation."

107.    The unsophisticated consumer, would interpret "Denise's" statements in Calls 1 and 2 to mean that a lawsuit had already been filed.

108.    In fact, no such lawsuit was pending at the time RSI placed Calls 1 and 2.

109.    The unsophisticated consumer would interpret the language in Calls 1 and 2 as a threats of imminent legal action.

110.    RSI, in fact, had no authority or ability to sue Plaintiff to collect a debt allegedly owed to Kay Jewelers.

111.    RSI violated 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

## **COUNT V -- WCA**

112.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

113.    RSI's phone calls falsely represented that Kay Jewelers had filed a lawsuit against Plaintiff.

114.     In fact, Kay Jewelers had not determined whether it would sue Plaintiff or any class member when RSI called Plaintiffs.

115.     Moreover, RSI had no authority or intent to sue Plaintiff or class member. Kay Jewelers would be the real party in interest.

116.     RSI violated Wis. Stat. §§ 427.104(1)(k) and 427.104(1)(L).

## COUNT VI – WCA

117.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

118.     In Calls 1 and 2, RSI disclosed "to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information."

119.     RSI violated Wis. Stat. §§ 427.104(1)(e).

## CLASS ALLEGATIONS

120.     Plaintiffs brings this action on behalf of three Classes.

121.     Class 1 consists of (a) All persons within the United States who, (b) between August 21, 2013 and August 21, 2017, inclusive, (c) received a non-emergency text message from or on behalf of RSI to a cellular telephone, (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice, and (e) who did not provide consent or who revoked consent to contact the person's cellular phone. Plaintiff Schellenberger is the designated representative of Class I. Class I shall be called the "TCPA class").

122.     Class II consists of (a) all natural persons in the State of Wisconsin (b) who received a telephone call from RSI, (c) seeking to collect a debt for personal, family or

household purposes, (d) between August 21, 2016 and August 21, 2017, inclusive, (e) in which RSI's employee communicated the terms "pending civil matter," or (f) referenced a pending civil matter or otherwise threatened legal action against the consumer, (g) when no such action was filed or pending. Plaintiff Gibeau is the designated representative of Class II. Class II shall be called the "Litigation Threat class."

123. Class III consists of (a) all natural persons in the State of Wisconsin (b) who received a telephone call from RSI, (c) seeking to collect a debt for personal, family or household purposes, (d) between August 21, 2016 and August 21, 2017, inclusive, (e) in which RSI's employee communicated the existence of an alleged debt (f) to a third party, (g) without the consumer's consent. Plaintiff Gibeau is the designated representative of Class III. Class III shall be called the "Third Party Disclosure class."

124. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

125. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether the Defendant complied with the TCPA, FDCPA and/or WCA.

126. Plaintiffs' claims are typical of the claims of the members of each class. All are based on the same factual and legal theories.

127. Plaintiffs will fairly and adequately represent the interests of the members of each class. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

128.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

**JURY DEMAND**

129.     Plaintiffs hereby demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

A.     Injunctive relief prohibiting such violations of the TCPA and WCA by Defendant in the future;

B.     As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff Schellenberger seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C.     As a result of Defendant's violations of 47 U.S.C. § 227(b)(1), Plaintiff Schellenberger seeks for himself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

D.     As a result of Defendant's violations of 15 U.S.C. §§ 1692b, 1692c and 1692e, Plaintiffs seek an award of statutory or actual damages per class member.

D.     As a result of Defendant's violations of Wis. Stat. §§ 427.104(1)(e), 427.104(1)(k) and 427.104(1)(L), an award of the greater of $100 to $1,000 or actual damages per class member;

E.     Injunctive relief, including an Order:

1)  prohibiting RSI from using an ATDS to communicate with consumers' cell phone numbers without and prior express consent;

2) prohibiting RSI from referring to a "pending civil matter" and "pending civil matter filed against" the consumer, unless a lawsuit has actually been filed against the consumer;

3) prohibiting RSI from communicating with third parties and disclosing the existence of a debt without the consumer's express consent.

F.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

G.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

H.      Such other relief as the Court deems just and proper.

Dated:  August 21, 2017

**ADEMI & O'REILLY, LLP**

By:    /S/ John D. Blythin
         Shpetim Ademi (SBN 1026973)
         John D. Blythin (SBN 1046105)
         Mark A. Eldridge (SBN 1089944)
         3620 East Layton Avenue
         Cudahy, WI 53110
         (414) 482-8000
         (414) 482-8001 (fax)
         sademi@ademilaw.com
         jblythin@ademilaw.com
         meldridge@ademilaw.com